Frank ROSENTHAL, Plaintiff,

v.

The STATE OF NEVADA; Nevada Gaming Commission; State Gaming Control Board; Peter Echeverria, as a former member of the Nevada Gaming Commission; Harry Reid, as a member of the Nevada Gaming Commission; Frank Schreck, as a former member of the Nevada Gaming Commission; George C. Swarts, as a member of the Nevada Gaming Commission; Jack Walsh, as a member of the Nevada Gaming Commission; Clair Haycock, as a member of the Nevada Gaming Commission; Walter Cox, as a member of the Nevada Gaming Commission; Philip Hannifin, as a former member of the State Gaming Control Board; Roger Trounday, as a member of the State Gaming Control Board; Jack Stratton, as a member of the State Gaming Control Board; John Does I–C; and A&B Companies I–C, inclusive, Defendants.

Civ. No. LV 79–39 RDF.

United States District Court,
D. Nevada.

May 6, 1981.

Oscar B. Goodman of Goodman, Oshins, Brown & Singer, Las Vegas, Nev., for plaintiff.

Richard Bryan, Atty. Gen., State of Nev., Carson City, Nev., for defendants.

A. J. Hicks, Sp. Deputy Atty. Gen., Reno, Nev., for defendants State of State Gaming Control Board, Peter Echeverria, Philip Hannifin, Jeff Silver, Roger Trounday and Jack Stratton.

Peter Echeverria, Sp. Deputy Atty. Gen., Reno, Nev., for defendants Nevada Gaming Commission, Harry Reid, Frank Schreck, George Swarts, Jack Walsh, Clair Haycock and Walter Cox.

Raymond D. Pike, Deputy Atty. Gen., Carson City, Nev., for all named defendants by Nikolas L. Mastrangelo, Deputy Atty. Gen., Gaming Division, Carson City, Nev.

## ORDER RE MOTIONS

ROGER D. FOLEY, District Judge.

The plaintiff, Frank Rosenthal, brought this suit on March 13, 1979, against the defendants State of Nevada, the Nevada Gaming Commission, certain members and former members of the Nevada Gaming Commission, the State Gaming Control Board, and certain members and former members of the State Gaming Control Board. The plaintiff alleges that the actions of the defendants deprived him of his rights under Article IV, § 2, and under the First, Fifth and Fourteenth Amendments of the United States Constitution. The plaintiff claims that this Court has jurisdiction under Title 28 U.S.C. § 1343(3) and under Title 42 U.S.C. § 1983.

In 1974, Frank Rosenthal was executive consultant to the Chairman of the Board of the Argent Corporation, a holding company, which owned three major hotel-casinos in Clark County. At this time, the plaintiff had been issued a "work permit" as a gaming employee pursuant to Nevada Revised Statute 463.335 (1973).[1] In January of 1975, the plaintiff was required to apply for a gaming license as a "key employee" for the Argent Corporation. A "key employee" is one who, in the opinion of the Nevada Gaming Commission, "has the power to exercise a significant influence over the licensee's operation of a gaming establishment" and may be required to apply for a license. NRS 463.165(1) (1977). The plaintiff was denied a gaming license by the Nevada Gaming Commission in January of 1976. In effect at the time was Nevada Gaming Regulation 5.011(6) and NRS 463.595 (1975).[2] When read together, they precluded any person who had been found unsuitable for licensing from being employed or connected with a licensed establishment in any capacity. This would include any job as a "gaming employee" under a valid work permit and not just a job as a "key employee" subject to licensing. The effect of this

---

1. NRS 463.335 (1973) provides in part:

    1. As used in this section:

    (a) "Gaming employee" means any person connected directly with the operation of a nonrestricted establishment, and includes without limitation:

    (1) Boxmen;

    (2) Cashiers;

    (3) [Dealer;]

    (4) Floormen;

    (5) Hosts or other persons empowered to extend credit or complimentary services;

    (6) Keno runners;

    (7) Keno writers;

    (8) Machine mechanics;

    (9) Security personnel;

    (10) Shift or pit bosses;

    (11) Shills; and

    (12) Supervisors or managers.

    "Gaming employee" does not include bartenders, cocktail waitresses or other persons engaged in preparing or serving food or beverages.

    .    .    .    .    .

    (d) "Work permit" means any card, certificate or permit issued by the board or by a county or city licensing authority, whether denominated as a work permit, registration card or otherwise, authorizing the employment of the holder as a gaming employee.

    .    .    .    .    .

    3. No person may be employed as a gaming employee unless he is the holder of:

    (a) A valid work permit issued in accordance with the applicable ordinances or regulations of the county or city in which his duties are performed; or

    (b) If no work permit is required by either such county or such city, a work permit issued by the board.

2. NRS 463.595 (1975) provides:

    "1. Each officer, employee, director, partner, principal, trustee or direct or beneficial owner of any interest in any holding company or intermediary company, who the commission determines is, or is to become, engaged in the administration or supervision of, or any other involvement with, the gaming activities of a corporate licensee, must be found suitable therefor and may be required to be licensed by the commission, prior to such engagement.

    "If any officer, employee, director, partner, principal, trustee or direct or beneficial owner required to be found suitable pursuant to subsection 1 fails to apply for a gaming license within 30 days after being requested so to do by the commission, or is not found suitable by the commission, or his suitability or license is rescinded after such finding by the commission, the holding company or intermediary company, or both, shall immediately remove such officer, employee, director, partner, principal, trustee or owner from any position wherein he is engaged in the administration or supervision of, or any other involvement with, the gaming activities of a corporate licensee. If the commission suspends the suitability or license of any such officer, employee, director, partner, principal, trustee or owner, the holding company or intermediary company, or both, shall, immediately and for the duration of such suspension, suspend such person from performing any duties wherein he is engaged in administration or supervision of the gaming activities of the corporate licensee and from any other involvement therewith."

    Regulation 5.011(6): "Employing in any capacity in or about any licensed establishment (including hotel, restaurant or bar facilities, as well as the gaming casino) any person who has been denied a state gaming license on the grounds of unsuitability or who has refused to submit an application for licensing as a key employee when so requested by the commission, or whose past activities and reputation would tend to bring discredit on the industry or the State of Nevada."

statute and regulation was to automatically revoke the plaintiff's work permit which he had validly obtained. In the case of *State v. Rosenthal*, 93 Nev. 36, 559 P.2d 830, at 836–37 (Nev.1977) (*Rosenthal* I), appeal dismissed, 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977), the Nevada Supreme Court upheld the denial of the license by the Nevada Gaming Commission finding that the plaintiff was accorded procedural due process in his hearing before the Commission, under Article 1, Section 8, of the Nevada Constitution, which provides in pertinent part, "No person shall .... be deprived of life, liberty, or property, without due process of law." Id. at 835. The Court further held that in applying for a license, the plaintiff had no interest which would be guaranteed federally protected constitutional rights. Id. at 836. However, the Court did hold that NGC Reg. 5.011(6) and NRS 463.595

(1975) were unconstitutional because they automatically deprived the plaintiff his work permit to work as a gaming employee without due process, i. e., without prior notice and an opportunity to be heard. The Court concluded that Frank Rosenthal could continue to hold a work permit as a gaming employee. Id. at 837.

In 1977, the Nevada Legislature passed certain statutes to specifically embody the concept of NGC Reg. 5.011(6) in that anyone found unsuitable for a gaming license was not to be employed by or have contractual relations with a licensed establishment, except as an entertainer. NRS 463.165 (1977); NRS 463.560 (1977).[3]

After the decision of Rosenthal I, the plaintiff became Food and Beverage Director and, later, Entertainment Director for the Stardust Hotel, which was owned by Karat, Inc., a subsidiary of the Argent Cor-

---

**3.** NRS 463.165 (1977) provides in part:

*3. If an employee required to be licensed under subsection 1:*

*(a) Does not apply for a license within 30 days after being requested to do so by the commission, and the commission makes a finding of unsuitability for such reason;*

*(b) Is denied a license because of a lack of good character, honesty or integrity; or*

*(c) Has his license revoked by the commission,*

*the gaming licensee by whom he is employed shall terminate his employment upon notification by registered or certified mail to the licensee of such action.*

*4. A gaming licensee shall not pay to a person who has been terminated pursuant to subsection 3 of this section any remuneration for any service except for amounts due for services rendered before the date of receipt of notice of such action by the commission. Any contract or agreement for personal services or for the conduct of any activity at the licensed gaming establishment between a gaming licensee and a person terminated pursuant to subsection 3 is subject to termination. Every such agreement shall be deemed to include a provision for its termination without liability on the part of the licensee or registered holding company upon a finding by the commission that the person is unsuitable to be associated with a gaming enterprise. Failure expressly to include such a condition in the agreement is not a defense in any action brought pursuant to this section to terminate the agreement.*

*5. A gaming licensee shall not enter into any contract or agreement, except a bona fide entertainment contract, with a person*

who is found unsuitable or who is denied a license because of lack of good character, honesty or integrity or whose license is revoked by the commission or with any business enterprise under the control of that person after the date of receipt of notice of such action by the commission.

*6. A gaming licensee shall not employ, except as a bona fide entertainer, any person who is found unsuitable, who has been denied a license because of a lack of good character, honesty or integrity or whose license is revoked by the commission after the date of receipt of notice of such action by the commission, without prior approval of the commission.*

NRS 463.560 (1977) provides:

1. If an employee of a corporate licensee who is required to be licensed individually:

(a) Does not apply for a license within 30 days after the commission requests him to do so, and the commission makes a finding of unsuitability for that reason;

(b) Is denied a license; or

(c) Has his license revoked by the commission. The corporate gaming licensee by whom he is employed shall terminate his employment upon notification by registered or certified mail to the corporation of such action.

2. If the corporate licensee designates another employee to replace the employee whose employment was terminated, it shall promptly notify the commission and shall cause the newly designated employee to apply for a gaming license.

poration. Believing that Rosenthal continued to significantly influence gaming, the Nevada Gaming Commission again directed that the plaintiff submit an application to be licensed as a key employee in June of 1978. The Gaming Control Board and the Gaming Commission, meeting in joint session, denied Rosenthal a license. Again, the effect of this decision under Nevada law was to automatically revoke the plaintiff's work permit and to effectively deny the plaintiff the right to be employed by a licensed establishment. NRS 463.165 (1977); NRS 463.560 (1977).

The plaintiff then sought relief in Nevada courts before bringing this action in this court. The plaintiff filed a complaint on December 27, 1978, in the Eighth Judicial District Court of Nevada and sought declaratory relief, injunctive relief, and judicial review of the decision of the Nevada Gaming Commission. The plaintiff alleged that the hearings before the State Gaming Control Board and the Nevada Gaming Commission were a sham and conducted in a manner to deprive him of his right to due process of law. Also, the plaintiff alleged that the provisions of NRS 463.165 (1977) and NRS 463.560 (1977) became operative and thereby automatically deprived him of his work permit without a due process hearing. No claim was specifically made under Title 42 U.S.C. § 1983 in the state court action.[4] Also, no members or former members of the Nevada Gaming Commission or the State Gaming Control Board were parties in the state court suit and no damages were sought in that suit. The Eighth Judicial District Court of Nevada refused to

grant any relief. *Rosenthal v. Nevada*, No. A185069 (Dist.Ct.Nev. Feb. 16, 1979). The district court held that the plaintiff was not denied due process in the hearings before the State Gaming Control Board and the Nevada Gaming Commission and that the plaintiff's work permit had expired. Id.

The plaintiff then brought this action pursuant to Title 42 U.S.C. § 1983, seeking general damages, punitive damages and injunctive relief. Here, again, the plaintiff alleges that he was deprived of his work permit without due process of law pursuant to NRS 463.165 and that this denies him his rights under Article IV, § 2, and under the Fifth and Fourteenth Amendments to the United States Constitution. Additional facts were alleged that the plaintiff had also been precluded from broadcasting his television show from the grounds of the Stardust Hotel pursuant to the decision of the Nevada Gaming Commission and the provisions of NRS 463.165 (1977). The plaintiff alleges that this violates his First Amendment rights to free speech. Also, certain members and former members of the Nevada Gaming Commission and the State Gaming Control Board were added as defendants in this action.

The plaintiff subsequently appealed the decision of the Eighth Judicial District Court to the Nevada Supreme Court. On the appeal, the Nevada Supreme Court upheld the district court in that the plaintiff was a "key employee" subject to the licensing requirement. *Rosenthal v. Nevada*, Nev., 620 P.2d 874, 876 (Nev.1980) (*Rosenthal* II). However, the Nevada Supreme Court rejected the finding that the plain-

---

4. "State courts exercise concurrent jurisdiction with federal district courts over cases arising under 42 USCS § 1983."

Bennun v. Board of Governors of Rutgers, State University, 413 F.Supp. 1274 (D.N.J. 1976).
*Perry v. Apache Junction Elementary School Dist.*, 20 Ariz.App. 561, 514 P.2d 514, petition den., 111 Ariz. 1, 522 P.2d 761 (1973).
*Brown v. Pitchess*, 13 Cal.3d 518, 119 Cal. Rptr. 204, 531 P.2d 772 (1975).
*Williams v. Horvath*, 16 Cal.3d 834, 129 Cal. Rptr. 453, 548 P.2d 1125 (1976).
*Alberty v. Daniel*, 25 Ill.App.3d 291, 323 N.E.2d 110 (1974).

*Endress v. Brookdale Community College*, 144 N.J.Super. 109, 364 A.2d 1080 (1976).
*Kish v. Wright*, 562 P.2d 625 (Utah 1977).
*Terry v. Kolski*, 78 Wis.2d 475, 254 N.W.2d 704 (1977).
*Board of Trustees v. Holso*, 584 P.2d 1009, reh. den. (Wyo.), 587 P.2d 203 (Wyo.1978).
*Tomsick v. Jones*, 464 F.Supp. 371 (D.Colo. 1979).
*Shapiro v. Columbia Union Nat. Bank & Trust Co.*, 576 S.W.2d 310 (Mo.1978).
*Tyler v. Whitehead*, 583 S.W.2d 240 (Mo. App.1979).

tiff's work permit had expired. The Court held that NRS 463.165 (1977) and NRS 463.-560 (1977), which automatically revoked the plaintiff's work permit, were also inform for want of procedural due process. The Court concluded that the plaintiff could continue to enjoy a work permit as a gaming employee. Id.

## MOTIONS BEFORE THIS COURT

The defendants originally brought a motion to dismiss on April 5, 1979. After some delay, this Court ordered that additional briefs be filed with the Court in light of the decision of the Nevada Supreme Court in *Rosenthal* II. The plaintiff argues that he is entitled to pursue his damage claims against the various defendants because the Nevada Supreme Court found that his constitutional rights had been violated when his work card was automatically terminated under Nevada law. The plaintiff now concedes, and this Court holds, that the plaintiff's claims for equitable relief have been rendered moot by time and the decision in *Rosenthal* II, supra. Cf. *Hall v. Beals*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); *Friends of Earth, Inc. v. Bergland*, 576 F.2d 1377 (9th Cir. 1978). The defendants reassert their motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The defendants argue that plaintiff's damage claims are precluded by the doctrine of res judicata and recognized governmental immunities under § 1983.

### 1. Res Judicata

■ Where a federal constitutional claim is based on the same asserted wrong as was the subject of a state action, res judicata will bar the federal constitutional claim whether it was asserted in state court or not. The reason is that the state judgment on the merits serves not only to bar every claim that was raised in state court but, also, to preclude the assertion of every legal theory or ground for recovery that might have been raised in state court supporting the granting of the desired relief.

*Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975), cert. denied, 434 U.S. 847, 96 S.Ct. 807 (1976); *Flynn v. Board of Chiropractic Examiners*, 418 F.2d 668 (9th Cir. 1969). The fact that a different or additional form of relief is requested in the second action does not preclude the application of res judicata. *St. John v. Wisconsin Employment Relations Board*, 90 F.Supp. 347, 351 (E.D.Wis.1950). Furthermore, the bringing in of additional parties in the second suit that contributed to the same alleged wrong in the first suit, does not violate the requirement for identity of the parties in the application of the doctrine of res judicata. Also, the pleading of additional facts to show an aggravation of the alleged harm in the second suit does not alter the existence of the same facts essential to the two suits. *Tomiyasu v. Golden*, 81 Nev. 140, 400 P.2d 415, 418, cert. denied, 382 U.S. 844, 86 S.Ct. 89, 15 L.Ed.2d 85 (1965). To do otherwise would allow the plaintiff to fragment a single cause of action and to litigate piecemeal the issues which could have been litigated in one action. *Scoggin v. Schrunk*, supra; *Flynn v. Board of Chiropractic Examiners*, supra.

■ The plaintiff should have asserted his damage claims pursuant to Title 42 U.S.C. § 1983 in the state court action. The pleading of additional facts showing an aggravation of the harm, the addition of certain members and former members of the Nevada Gaming Commission and the State Gaming Control Board, and the prayer for damages in the federal court action does not alter the rule. This Court believes that the doctrine of res judicata precludes the plaintiff from pursuing his claim under Title 42 U.S.C. § 1983 in this case.

### 2. Governmental Immunities

A. Defendants State of Nevada, the Nevada Gaming Commission, and the State Gaming Control Board

■ The United States Supreme Court has held that Title 42 U.S.C. § 1983 does not constitute an abrogation of the Eleventh Amendment immunity of the states. Therefore, a state and its agencies are not

subject to suit pursuant to Title 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–40, 99 S.Ct. 1139, 59 L.Ed.2d 358, 365–66 (1979); *Alabama v. Pugh*, 438 U.S. 781–782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114, 1116 (1978) (per curiam).

The Nevada Gaming Commission and the State Gaming Control Board are agencies of the State of Nevada. Cf. *Edelberg v. Illinois Racing Board*, 540 F.2d 279 (7th Cir. 1976). Both the Commission and the Control Board are created by statute. NRS 463.022 (1977); NRS 463.030 (1977). Members of the Commission and the Control Board are appointed by the Governor. NRS 463.024 (1977); NRS 463.050 (1977). The duties of the Commission and the Control Board are to issue licenses and enforce statutes and regulations on a statewide basis. See NRS 463.130 (1977); NRS 463.140 (1977); NRS 463.220 (1977). Furthermore, all fees and penalties collected by these agencies are turned over to the state treasury. NRS 463.320 (1977).

The State of Nevada has explicitly refused to waive its immunity to suit under the Eleventh Amendment. NRS 41.031(3) (1977). Therefore, plaintiff's action pursuant to Title 42 U.S.C. § 1983 must be dismissed as to defendants State of Nevada, the Nevada Gaming Commission, and the State Gaming Control Board.

B. Defendant Members and Former Members of the Nevada Gaming Commission and State Gaming Control Board.

■ The plaintiff originally brought this suit against Peter Echeverria and Frank Schreck as former members of the Nevada Gaming Commission; Harry Reid, George C. Swarts, Jack Walsh, Clair Haycock, and Walter Cox as members of the Nevada Gaming Commission; Phillip Hannifin and Jeffrey Silver as former members of the State Gaming Control Board; and Roger Trounday and Jack Stratton as members of the State Gaming Control Board. Plaintiff asserts that these members and former members of the Nevada Gaming Commission and the State Gaming Control Board should be held liable in damages for violating his civil rights pursuant to Title 42 U.S.C. § 1983.

In *Butz v. Economou*, 438 U.S. 478, 512–17, 98 S.Ct. 2894, 2913–16, 57 L.Ed.2d 895, 920–23 (1978), the United States Supreme Court held that federal hearing examiners or administrative law judges, agency officials responsible for initiating agency adjudication, and agency attorneys who arranged and presented the evidence on the record were absolutely immune for damages from suits for violations of a person's civil rights. The Supreme Court determined that people in these positions were comparable to judges and prosecutors who have traditionally enjoyed absolute immunity in suits for damages in actions pursuant to Title 42 U.S.C. § 1983. *Butz v. Economou*, supra; *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Since the decision of the United States Supreme Court in *Butz*, many courts have found similar absolute immunity for administrative officials, commissioners, and attorneys on the state level. E. g., *Morales v. Vega*, 483 F.Supp. 1057, 1063 (D.P.R.1979) (immunity for members of a labor grievance committee); *Hamm v. Yeatts*, 479 F.Supp. 267, 271 (W.D.Va.1979) (immunity for members of the Virginia Alcoholic Beverage Control Commission); *Jordan v. Hawaii Gov't Emp. Ass'n, Local 152*, 472 F.Supp. 1123, 1125 (D.Hawaii 1979) (immunity for members of Hawaii's Public Employment Relations Board); *Brown v. DeBruhl*, 468 F.Supp. 513 (D.S.C.1979) (immunity for members of the South Carolina Alcoholic Beverage Control Commission).

Under Nevada law, the members of the State Gaming Control Board and the Nevada Gaming Commission have roles similar to prosecutors and judges, respectively. In deciding on the suitability of a potential licensee, in disciplining a licensee, or in revoking a work permit, the State Gaming Control Board is in charge of conducting an investigation and either makes a recommendation to the Nevada Gaming Commission as to the suitability of a potential licensee,

or decides whether to file a complaint with the Commission on disciplining a licensee or in revoking a work permit. See NRS 463.-210 (1977); NRS 463.310 (1977); NRS 463.-337 (1977). In deciding whether to grant a license, discipline a licensee, or revoke a work permit, the members of the Nevada Gaming Commission have roles and power similar to that of a judge. See NRS 463.-337 (1977); NRS 463.310 (1977); NRS 463.-220 (1977). The Commission has the power to issue subpoenas, compel attendance of witnesses, and administer oaths. NRS 463.-140(3) (1977). The Commission's hearings are conducted in a manner which has many of the traditional safeguards of a regular court. See NRS 463.312 (1977).

In deciding whether certain administrative officials should enjoy absolute immunity, a court must balance the society's interest in protecting the people that have a duty to render decisions in an important area of public interest against the possibility that some individuals' constitutional rights might be violated in the process. See *Butz v. Economou*, 438 U.S. 478, 508–17, 98 S.Ct. 2894, 57 L.Ed.2d 895, 1916–23 (1978). The members of the State Gaming Control Board and the Nevada Gaming Commission are charged with the awesome responsibility of regulating the gaming industry in Nevada and keeping undesirable elements out of the gaming industry. *Rosenthal* I, NRS 463.130 (1977). In this important area of public interest where the decisions made by these individuals often involve millions of dollars and the reputation of a whole state, there is a danger that a person who receives an adverse decision will retaliate and seek vengeance in the courts. 438 U.S. at 513–16, 98 S.Ct. at 2914–15, 57 L.Ed.2d at 920–22. The discretion and judgment of these officials in initiating administrative proceedings and in deciding matters of great public importance might be affected if their immunity from damages arising from those decisions was less than complete. 438 U.S. at 315, 98 S.Ct. at 2915, 57 L.Ed.2d at 921. Furthermore, the plaintiff in this case had his civil rights vindicated by judicial review through the Nevada court system. Therefore, this Court holds that the members and former members of the State Gaming Control Board and the Nevada Gaming Commission are absolutely immune from claims for damages brought pursuant to Title 42 U.S.C. § 1983.

3. Defendants "John Does I–C, and A&B Companies I–C"

Plaintiff's complaint contains allegations against many fictitious or "Doe" defendants. The Ninth Circuit bars the use of fictitious or "Doe" pleadings. E. g., *Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969). These defendants are hereby dismissed pursuant to Rule 12(h)(3), FRCP, which allows this Court to dismiss on its own motion where it lacks subject matter jurisdiction.

## CONCLUSION

The defendants' motion to dismiss is hereby granted and the plaintiff's complaint is hereby dismissed as to all the defendants in this case. Let judgment be entered accordingly.