Donald **BUCKNER**, Plaintiff,

v.

The **STATE OF NEVADA**, the Board of State Prison Commissioners, Richard Bryan, Brian McKay, William D. Swackhamer; Robert List, former Director of the State Board of Prison Commissioners; Vernon G. Housewright, Director, Nevada Department of Prisons; George Sumner, Warden, Nevada State Prison; Kaylene MacDonald; DOES I–V, Defendants.

No. CV–R–83–400–ECR.

United States District Court,
D. Nevada.

Dec. 18, 1984.

Patrick J. Mullen, Reno, for plaintiff.

D. Brian McKay, Atty. Gen. of the State of Nev. by David Sarnowski, Deputy Atty. Gen., Carson City, for defendants State of Nev. Bd. of Prison Com'rs and Richard H. Bryan, Brian McKay, William Swackhamer, Vernon G. Housewright, George Sumner, and Robert List.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

All defendants except Kayla McDonald (apparently misnamed Kaylene MacDonald in the complaint) have moved for summary judgment. The litigation has arisen from the injuries sustained by the plaintiff, an inmate of the Nevada State Prison, when hit by some pellets of 00 buckshot fired into the ground by Ms. McDonald. At the time (July 11, 1982), she was a correctional officer trainee manning by herself a perimeter guard tower. She had been hired on June 7, 1982. The shotgun blast was Ms. McDonald's response to sustained verbal abuse (mostly obscene) directed at her by a group of inmates in the prison yard.

The complaint, which seeks only damages, is comprised of three claims for relief. The first alleges that the moving defendants wrongfully assigned Ms. McDonald to the guard tower without sufficient training or experience to handle properly such a responsible post. This claim, which is based on 42 U.S.C. § 1983, further alleges that the assignment was in accordance with a policy of allowing inexperienced and insufficiently trained correctional officers to so serve.

The second claim for relief alleges that the defendants conspired to deprive the plaintiff of his rights by their failure properly to train, supervise and discipline correctional officers as to the use of force. It is based on 42 U.S.C. § 1985(3).

The third claim for relief alleges the state torts of assault, intentional infliction of emotional distress, false imprisonment and negligence. It seeks to invoke pendent jurisdiction of the Court.

At the threshold, the plaintiff faces the bar of sovereign immunity. The State

of Nevada has not waived its immunity from suit in federal court as conferred by the Eleventh Amendment. NRS 41.031(3); *Rosenthal v. State of Nev.*, 514 F.Supp. 907, 913 (D.Nev.1981). The immunity protects the State itself and its agencies and departments. *Pennhurst State School & Hosp. v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Spaulding v. Univ. of Washington*, 740 F.2d 686, 694 (9th Cir.1984). Therefore, the motion for summary judgment on behalf of defendants State of Nevada and Board of State Prison Commissioners must be granted.

■ The individual moving defendants all are charged in the complaint with actions and derelictions in their official capacities only. Defendants Bryan, McKay and Swackhammer are named as present members of the Board of State Prison Commissioners, whereas defendant List has been named as a member at the time of the shooting incident. Mr. Housewright is charged in his capacity as Director of the Nevada Department of Prisons and Mr. Sumner as Warden of Nevada State Prison. A suit challenging the constitutionality of a state official's actions is not considered to be against the state, even though he is sued in his official capacity. *Demery v. Kupperman*, 735 F.2d 1139, 1150 (9th Cir. 1984). That is the case here, so that the moving individual defendants are not protected by Eleventh Amendment immunity.

The Board of State Prison Commissioners has the general overall responsibility of supervising the State's prisons, including the review and approval of proposed prison regulations that govern the custody and care of inmates. *Craig v. Hocker*, 405 F.Supp. 656, 682 (D.Nev.1975); NRS 209.-131(5). The Director of the Nevada Department of Prisons, defendant Housewright, has the direct responsibility "for the supervision, custody, treatment, care, security and discipline" of all inmates of Nevada's prisons. NRS 209.131(4). He also is charged with the duty of establishing regulations covering the same subject matter. NRS 209.131(5). The Warden of

each prison, e.g., defendant Sumner as to the Nevada State Prison, is responsible to the Director of the Department of Prisons for "the execution of all policies and the enforcement of all regulations" pertaining to the custody and care of the inmates of his institution. NRS 209.161(3).

The plaintiff contends that Department of Prisons Procedure No. 218 is overly vague and too general in that it permits the use of force in the "[e]nforcement of rules and procedures." However, it goes on to limit such use to "reasonable force," which is defined as "no more force than is actually necessary under the circumstances in each case" and "short of deadly force." In turn, "deadly force" is defined as that degree of force which is likely to cause serious bodily injury. Department of Prisons Information Bulletin #82–10 specifies, in section (c)(1)(b)(5), that only birdshot may be used when firing warning shots into the yard, because of the small risk of resulting injury; buckshot may be used only to prevent escapes, because of its potential to kill or injure innocent people. Thus, it is apparent that the written rules and procedures of the Department of Prisons were not the legal cause of the plaintiff's injuries. Ms. McDonald's act of shooting buckshot into the yard appears, from the evidence presented here, to have been contrary to the Department's rules and procedures. Therefore, the plaintiff's injuries resulted not from State procedure but rather, from an unauthorized failure to follow State procedure. *See Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981) (not then a violation of the Due Process Clause of the Fourteenth Amendment redressable in federal court).

■ The use of excess force against a prison inmate, with the authorization of prison officials, may constitute an Eighth Amendment violation. *Albers v. Whitley*, 743 F.2d 1372, 1374 (9th Cir.1984). It is the plaintiff's contention that his injuries occurred because of the moving defendants' practice of placing untrained and inexperienced correctional officers in the guard towers, with deliberate indifference to the

right of prisoners not to be subject to the use of excess force. In a suit wherein state prisoners alleged that conditions at their penitentiary amounted to cruel and unusual punishment, the Ninth Circuit declared:

"The district court may find excess physical force an Eighth Amendment violation, may order guards to refrain from using such force, and may order prison officials to take steps to prevent guards from such activities. But to require prisons to have adequate recruiting, screening, and training programs is an impermissible judicial involvement with the minutiae of prison administration."

*Hoptowit v. Ray*, 682 F.2d 1237, 1251 (9th Cir.1982). Lack of such programs was held not to be condemned by the Eighth Amendment. *Ibid.*

■ Nevertheless, Nevada statute does impose responsibility on the Director of Prisons and the Warden of each prison as to the custody, care and security of prison inmates. NRS 209.131(4) and (6); NRS 209.161(3). In *Hirst v. Gertzen*, 676 F.2d 1252, 1263 n. 28 (9th Cir.1982), the Court found that a similar responsibility created a duty to staff a jail with properly hired, trained and supervised personnel. A systematic failure to exercise even minimal care in the hiring and supervision of correctional officers, which created a foreseeable risk that a violation of the plaintiff's civil rights would occur, was held to give rise to a claim for relief when injury did proximately result. *See Id.* at 1263. In harmonizing the *Hoptowit* and *Hirst* cases, this Court concludes that it may not require said officials to institute or maintain any particular hiring or training programs, but may hold them liable if their lack of care as to these matters results in injury to an inmate.

■ Liability must be based on more than the mere right to control employees. *Sewell v. Dever*, 581 F.Supp. 556, 561 (W.D. Pa.1984). A succinct statement of the applicable standard is found in *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982):

"... a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

This is an extremely difficult standard to meet. The Fifth Circuit has required that the training be so grossly inadequate as to reflect a conscious indifference by the supervisory authorities. *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir.1983). Another jurisdiction looks for the training to be so grossly negligent as to make the correctional officers' misconduct almost inevitable. *Leite v. City of Providence*, 463 F.Supp. 585, 590 (D.R.I.1978).

■ Affidavits supporting the defendants' motion herein show that Ms. McDonald did receive training, including qualification on the use of firearms. They reflect no advance warning that she might overreact to circumstances such as caused her to fire the shotgun into the prison yard. She received training on the use of force. Before hiring, a correctional officer must take a written test and be interviewed. Arrest and driving records are investigated. Both classroom and on-the-job training is provided. Assignment to a guard tower minimizes direct contact between the officer and the inmates. There has been no pattern of the unjustified use of buckshot at Nevada State Prison. All of these facts overwhelm the contentions of the plaintiff with regard to deficiencies in the training program. There is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law on the plaintiff's first claim for relief.

■ The second claim for relief, based on conspiracy, must fail as a matter of law because there are no allegations of racial or other class-based invidious discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d

338 (1971); *Mollnow v. Carlton,* 716 F.2d 627, 628 (9th Cir.1983).

The third claim for relief asks the Court to exercise pendent jurisdiction over State tort claims. Since the moving defendants are entitled to summary judgment on both the federal claims, the pendent State claims should also be dismissed. *See Jones v. Community Redevelopment Agcy. of City of L.A.,* 733 F.2d 646, 651 (9th Cir.1984).

IT IS, THEREFORE, HEREBY OR-DERED that summary judgment be entered in favor of the moving defendants and against the plaintiff as to the first and second claims for relief found in the complaint herein.

IT IS FURTHER ORDERED that the third claim for relief be dismissed without prejudice.