Sydell R. KRAFT, Levin International Corporation, Trans Atlantic Games of Nevada, Inc., and Trans Atlantic Games, Inc., Plaintiffs,

v.

S. Barton JACKA, Michael D. Rumbolz, Guy T. Hillyer, and Larry G. Hickman, Defendants.

No. CV–N–86–340–ECR.

United States District Court, D. Nevada.

Sept. 8, 1987.

Michael J. Silverberg, New York City, William Rittenberg, New Orleans, La., and Martin J. Kravitz, Las Vegas, Nev., for plaintiffs.

Mark Lerner, Deputy Atty. Gen., Gaming Div., Las Vegas, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

## INTRODUCTION

The plaintiffs in this case are Sydell R. Kraft, Levin International Corporation ("LIC"), Trans Atlantic Games of Nevada, Inc. ("TAG–Nevada"), and Trans Atlantic Games, Inc. ("TAG"). They initiated the case on June 18, 1986. The defendants are S. Barton Jacka, Michael D. Rumbolz, Guy T. Hillyer, and Larry G. Hickman. Jacka, Rumbolz, and Hillyer were members of the Nevada Gaming Control Board ("GCB") when the events underlying this case occurred. Hickman was an employee of the GCB. The complaint includes six separate claims for relief. The first two claims for relief are based on the civil remedies of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The third claim is based on common law fraud. The fourth and fifth are based on the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and 1986. The plaintiff's last claim is one seeking injunctive relief.

The defendants, on October 3, 1986, moved for summary judgment (docket #13). That motion was opposed by plaintiffs on December 18, 1986 (docket #29). On January 23, 1987, the defendants replied (docket #36). The plaintiffs requested oral argument on the motion (docket #41). A hearing was held before the Court on August 31, 1987.

FACTS

The plaintiffs are in the business of manufacturing, distributing, and operating gaming devices. In 1984, they applied to the Nevada GCB for licenses and approvals to manufacture, distribute and operate slot machines in Nevada. The plaintiffs paid investigation fees in connection with their applications.

The GCB considered the applications at a public meeting on February 13, 1985. *See* Exhibit A to Motion for Summary Judgment. At the meeting, the GCB expressed concerns regarding various matters. Specifically, the GCB questioned the applicants about their engaging without a license in the sale and distribution of slot machines in Nevada. *Id.* at 223–25 and 236. The GCB also expressed concerns regarding information that a machine that had been approved in a particular form had been shipped into Nevada by the applicants with an unapproved modification. *Id.* at 238. The GCB also expressed concerns about associations with a convicted felon by Mr. Howard S. Levin, who, along with the plaintiffs, was an applicant before the GCB in February, 1984, and who, at the time, was president of all the plaintiff corporations. *Id.* at 240–41; *see also* Affidavit of Howard S. Levin attached to Opposition to the Motion for Summary Judgment. Finally, the GCB voiced concerns about the applicants' apparent difficulty in maintaining control over their slot machines in Nevada. Exhibit A to Motion for Summary Judgment at 241.

The GCB unanimously voted to recommend approval of plaintiffs' applications, subject to a one-year limitation. *Id.* at 249–255. The GCB reminded the applicants that its action was merely a recommendation to the Nevada Gaming Commission, which would make the final decision. *Id.* at 247.

The Gaming Commission considered the GCB's recommendation at a public meeting on February 21, 1985. Exhibit B to Motion for Summary Judgment. The Commission echoed some of the concerns raised by the GCB: the associations of Howard S. Levin, *id.* at 89–94, 108–11, 140–41; and the applicants' unlicensed sale and shipment of slot machines, *id.* at 94–104. The Commission also expressed concerns about the following: discrepancies between the applicants' descriptions of the apparently unlicensed transactions and those given by others, *id.* at 94–104, 114–18, 126; information that the applicants' slot machines had been found in use in illegal activities, *id.* at 104–108; the applicants' lack of attention to and apparent violations of Nevada law, *id.* at 107, 121–23, 147; and the applicants' lack of attention to detail and documentation in their business, *id.* at 112–14, 119–21. The Nevada Gaming Commission voted three to two to issue licenses and approvals in accordance with the GCB's recommendations. *Id.* at 148–50 ("CHAIRMAN BIBLE: The motion carries.... It is a one-year limited license." *Id.* at 150.).

The plaintiffs were, thereafter, formally notified of the Commission's action. Exhibits C–1, C–2, and C–3 to Motion for Summary Judgment. They were issued licenses, each of which stated: "Limited license to expire on date of Nevada Gaming Commission meeting of February, 1986," Exhibits D–1 and D–2 to Motion for Summary Judgment.

The Commission's orders of registration of plaintiffs' LIC and TAG provided:

[A]ny offer for the sale of any equity security ... shall be void unless approved in advance by the State Gaming Control Board. Such approval is deemed granted if an application for same has been filed with the Board for 30 days and the Board has not ordered acceleration or extension of time, or issued a stop order during such period.

In October, 1985, LIC filed a preliminary prospectus with the Securities and Exchange Commission ("SEC") in connection

with a proposed public offering. Exhibit E to Motion for Summary Judgment. The proposed offering was highly speculative. *Id.* at 5. According to the prospectus, a substantial portion of the proceeds were to be advanced to TAG. *Id.* at 14. The GCB issued an order on November 20, 1985, stopping the offering. Exhibit F–1 to Motion for Summary Judgment. Two days later the GCB rescinded the stop order. Exhibit F–2 to Motion for Summary Judgment.

Subsequently, the plaintiffs and Howard Levin applied for licenses to become effective upon the expiration of the one-year licenses issued previously. These applications were considered by the GCB at a public meeting in Las Vegas, Nevada, on February 6, 1986. Exhibit G to Motion for Summary Judgment. Kraft and Howard Levin attended the meeting with their attorney. *Id.* at 178.

At this meeting, the GCB expressed several concerns: the possibility that the applicants had failed to comply in a timely fashion with at least one condition of the one-year license, *id.* at 209, 213–14, 216; the applicants' failure to supply an explanation of discrepancies between their actual and reported income, *id.* at 229–47, 326–31; the applicants' failure to comply with a regulation requiring their reporting a certain transaction, *id.* at 249–61; the applicants' poor record-keeping procedures, *id.* at 264–70, 331; the applicants' choice of an underwriter and the underwriter's motives for underwriting LIC's stock offering, *id.* at 276–90; the applicants' failure to supply, upon request, documents regarding personal finances, *id.* at 293; Levin's substantial gambling debts, *id.* at 307–12, 315–24; and the possibility that Levin had employed a subterfuge to avoid repayment of those debts, *id.* at 316–22. At the meeting, the applicants' counsel eventually requested withdrawal of the applications of LIC and TAG. Counsel also asked for a continuance of the GCB's consideration of the application of TAG–Nevada until just before the Gaming Commission's next meeting. This was meant to allow LIC and TAG, as well as Levin, time to transfer their interests to Kraft so that only Kraft and TAG–

Nevada would be under consideration. *Id.* at 375–76. The GCB accommodated the revision of the applications, *id.* at 384–85, and granted the requests for withdrawal, *id.* at 392.

A week later, the GCB considered the revised applications at a special, public meeting in Las Vegas. Exhibit H to Motion for Summary Judgment. Kraft attended the meeting with her attorney. *Id.* at 9. At the meeting, the GCB expressed its concerns about the financial strength of TAG–Nevada. *Id.* at 22–39. The GCB also was troubled by the continued involvement of Levin. *Id.* at 10–15. The GCB was doubtful that Levin's transfer of interests to Kraft constituted a true separation of Levin from Kraft and TAG–Nevada. The GCB apparently felt that TAG would stand as a creditor able to exercise considerable influence over Kraft and TAG–Nevada. *Id.* at 42–44. The GCB also worried about the ability of Kraft to pay the debt to TAG. *Id.* at 39–42. The GCB worried the payment of the debt to TAG would come out of the assets of TAG–Nevada, weakening that corporation. *Id.* at 43–47. The GCB voted unanimously to recommend denial of the applications. Exhibit H to Motion for Summary Judgment at 60, 62, and 64. The GCB recommended denial "without prejudice," meaning that the applicants could cure the problems with their applications and reapply. *Id.* at 60. Chairman Jacka of the GCB again stressed to the applicants that the GCB action was only a recommendation to the Gaming Commission. *Id.* at 65.

The Gaming Commission considered the GCB recommendation at a public meeting on February 20, 1986. Exhibit J to Motion for Summary Judgment. Kraft attended the meeting with her attorney. *Id.* at 243. The commissioners expressed doubts about the adequacy of the separation of Howard Levin from TAG–Nevada and Kraft. *Id.* at 283–85. At the meeting, the Commission voted four to one against approval of a six-month limited license. Exhibit J at 303. A motion to deny licensing carried by the same majority. *Id.* at 303, 306; Exhibits

K–1 and K–2 to Motion for Summary Judgment.

On February 21, 1986, the plaintiffs' one-year limited licenses expired. *See* Exhibits D–1 and D–2 to Motion for Summary Judgment.

On March 7, 1986, GCB Chairman Jacka wrote to all Nevada licensees and their affiliates. Exhibit L to Motion for Summary Judgment. The letter notified licensees that the Gaming Commission had denied licenses to Kraft and TAG–Nevada, quoted provisions of Nevada law that require Commission approval before continuing or entering into business transactions with denied applicants, and advised that approval had been given for certain transactions necessary to wrap up the Nevada business of TAG–Nevada.

## STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The facts must be viewed and inferences drawn in the manner most favorable to the nonmoving party. *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). The moving party has the burden of demonstrating that it is entitled to summary judgment. *Id.*

## RICO CLAIMS

At oral argument on the Motion for Summary Judgment, the plaintiffs informed the Court that they voluntarily withdraw their claims made on the basis of RICO. Those claims, plaintiffs' first and second claims for relief, shall be dismissed.

## IMMUNITY

■ The United States Supreme Court has recognized the defense of absolute immunity on the part of certain officials of the executive branch of the federal government. *See Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). These include prosecutors and similar officials as well as other executive officers engaged in adjudicative functions. *Id.; see also Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Prosecutors are absolutely immune for quasijudicial acts taken within the scope of their authority. *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986).

■ After a thorough analysis, Judge Roger D. Foley of this District applied the doctrine of absolute immunity in a case brought under 42 U.S.C. § 1983 against members and past members of the Nevada State Gaming Control Board: *Rosenthal v. State of Nevada,* 514 F.Supp. 907, 913–914 (D.Nev.1981). The decision in *Rosenthal* concerning absolute immunity was based on the fact that the GCB is in charge of conducting investigations and making recommendations to the Nevada Gaming Commission as to the suitability of potential licensees. In doing so, the GCB acts much like a prosecutor. Judge Foley wrote in *Rosenthal:*

> The members of the State Gaming Control Board and the Nevada Gaming Commission are charged with the awesome responsibility of regulating the gaming industry in Nevada and keeping undesirable elements out of the gaming industry. *Rosenthal I,* NRS 463.130 (1972). In this important area of public interest where the decisions made by these individuals often involve millions of dollars and the reputation of a whole state, there is a danger that a person who receives an adverse decision will retaliate and seek vengence in the courts. [*Butz v. Economou* ] 438 U.S. at 513–516, 98 S.Ct. at 2914–15, 57 L.Ed.2d at 920–22. The discretion and judgment of these officials in initiating administrative proceedings and in deciding matters of great public importance might be affected if their immunity from damages arising from those decisions was less than complete. 438 U.S. at 515, 98 S.Ct. at 2915, 57 L.Ed.2d at 921.

*Id.* at 914. This Court agrees with and adopts this reasoning.

The claims against the defendants in this case are based on acts taken in the scope of their authority. All acts complained of were carried out by the defendants under their powers as members of the GCB. The defendants are entitled to absolute immunity for such acts. The absolute immunity of

the defendants requires summary judgment in favor of the defendants on the plaintiffs' civil rights claims.

■ Even if the defendants were not entitled to absolute immunity from the claims made by plaintiffs, the Court finds that the defendants would be shielded by qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The evidence submitted by the parties shows that the conduct of the defendants did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

■■ First of all, the plaintiffs have no constitutional or statutory right to receive a Nevada gaming license. *See Jacobson v. Hannifin,* 627 F.2d 177 (9th Cir.1980); NRS § 463.0129(2) ("No applicant for a license or other affirmative commission approval has any right to a license or the granting of the approval sought."); NRS § 463.220(7) ("The commission has full and absolute power and authority to deny any application for any cause it deems reasonable."). The plaintiffs assert that they enjoyed a protectible interest as a result of the one-year limited licenses. The Court finds that the limited licenses expired on February 21, 1986. After that date the plaintiffs stood in the shoes of first time applicants. The above authorities apply; the plaintiffs have no constitutional or statutory right to further licensing.

■ The plaintiffs have made the argument that the defendants denied them a proper accounting of their application fees. The plaintiffs, at the hearing, conceded that there is no absolute right to an accounting of any certain specificity. The Court, furthermore, has found no such right. The argument, then, that plaintiffs were denied a proper accounting fails unless the plaintiffs point to a constitutionally protected interest, the deprivation of which requires such procedure. This the plaintiffs have failed to do.

■ Next, the plaintiffs argue that the defendants violated a clearly established constitutional or statutory right by failing to conduct a sufficient investigation. Plaintiffs cite NRS § 463.310 as authority for the proposition that they have a right to an adequate investigation. NRS § 463.310 does not appear to apply to the investigation of license applications. Moreover, even if NRS § 463.310 did apply, the Court finds ample evidence that the GCB conducted a sufficient investigation. The GCB voiced numerous concerns with the applications of the plaintiffs for licenses. The concerns of the GCB were such that they evidenced a good deal of knowledge about the plaintiffs. The GCB clearly carried out a detailed investigation of the plaintiffs.

■ Next, the plaintiffs argue that the defendants denied them their clearly established rights by failing to give them timely notice of the GCB's 1986 recommendation to the Nevada Gaming Commission that the plaintiffs be denied licenses. The source of such a right is questionable; the Court sees no protectible liberty or property interest constitutionally requiring such notice, and the Court sees no statutory authority for such a right to notice. Even if the plaintiffs had such a right to notice, however, the Court finds that they had actual notice of the fact that the GCB had serious reservations concerning their licensing. On February 6, 1986, the GCB's reservations were so strong that two of the applicants withdrew their applications, and the other applicants asked for a continuance so that they could revise their applications. At the subsequent GCB meeting, as well, the GCB members expressed serious concerns about the suitability of the remaining applicants for licensing. The plaintiffs were certainly aware of the GCB's concerns. The GCB's formal recommendation could not have surprised the plaintiffs.

■ Last, the plaintiffs assert that the defendants have denied them a clearly es-

tablished right by notifying Nevada gaming licensees of the denial of plaintiffs' license applications. The plaintiffs apparently take the position that this notification has undermined their ability to do business with the Nevada licensees. The Court cannot see a deprivation of a clearly established right in these circumstances. The plaintiffs, having been denied a gaming license, have no right to do business with the Nevada licensees. Any other conclusion would render the GCB and the Nevada Gaming Commission powerless to control the influences upon the gaming industry in Nevada.

The Plaintiffs can point to no clearly established constitutional or statutory right which they have been denied as a result of the defendants' actions. The defendants are entitled to qualified immunity.

The defendants are thus entitled to summary judgment on plaintiffs' civil rights claims under the doctrines of absolute and qualified immunity.

CAUSATION

The claims for relief made by the plaintiffs are based largely on the fact that the plaintiffs were denied licenses. The defendants, however, did not deny the plaintiffs' licenses. The GCB merely makes recommendations to the Gaming Commission which in turn makes the final decisions regarding licensing. *See* NRS § 463.220. The responsibility for licensing is vested in the Gaming Commission. *State v. Rosenthal*, 93 Nev. 36, 42, 559 P.2d 830 (1977).

■■■ To succeed on a cause of action under § 1983, the plaintiffs must prove that the defendants' actions were the cause in fact and the proximate cause of the plaintiffs' injuries. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.1981). In the case at bar, the claim of causation, both factual and proximate, was cut off by the decision-making process of the Gaming Commission.

■■■ With regard to plaintiffs LIC and TAG the causation analysis has a further facet. Those two entities voluntarily withdrew their 1986 applications before the GCB took action on them. The withdrawal

of the LIC and TAG applications was a superseding cause of the failure of LIC and TAG to receive gaming licenses. The GCB cannot be found to have caused that failure.

These determinations concerning the causation of the plaintiffs' failure to receive gaming licenses require summary judgment in favor of the defendants on plaintiffs' civil rights claims to the extent those are based on the denial of licensing.

CLASS–BASED ANIMUS

■■■ In their fourth cause of action the plaintiffs allege that defendants conspired to deprive them of their rights in violation of 42 U.S.C. § 1985.

"To state a cause of action under § 1985(3), [plaintiffs] must claim 'some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Schuman v. State of California*, 584 F.2d 868, 870 (9th Cir.1978), *quoting, Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The plaintiffs' complaint fails to allege that they were the targets of a conspiracy fueled by a class-based, discriminatory animus.

Plaintiffs argue in response to the defendants' Motion for Summary Judgment that such class-based animus is not an element of a § 1985 claim where state action is alleged. Plaintiffs cite *Selzer v. Berkowitz*, 459 F.Supp. 347 (E.D.N.Y.1978) for this proposition. The plaintiffs' argument is without merit. Plaintiffs have overlooked several cases from the ninth circuit. The law in this circuit is clearly that class-based animus is an element of a § 1985 claim where state action is alleged. *See Bretz v. Kelman*, 773 F.2d 1026, 1028–29 (9th Cir.1985); *Mollnow v. Carlton*, 716 F.2d 627, 628 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984); *Stevens v. Rifkin*, 608 F.Supp. 710, 720–21 (N.D.Cal.1984) (specifically rejecting *Selzer*); *Condos v. Conforte*, 596 F.Supp. 197, 201 (D.Nev.1984); *Buckner v. State of Nevada*, 599 F.Supp. 788, 791 (D.Nev.1984); *Wright v. City of Reno*, 533 F.Supp. 58, 65 (D.Nev.1981).

Plaintiff Kraft has, in response to defendants' Motion for Summary Judgment, alleged that as a single woman she is a member of a class invidiously discriminated against by the defendants. The allegation of such discrimination against Kraft, made by Kraft in her affidavit supporting the plaintiffs' Opposition to Defendants' Motion for Summary Judgment, is conclusory at best. The transcripts of the GCB hearings submitted by the defendants indicate that the GCB had several non-discriminatory bases for denying Kraft a gaming license. Kraft has pointed to nothing in those transcripts supporting her assertion that she was discriminated against because she is a single woman. She says only that:

> The defendants' preoccupation with my personal life and my association with Howard Levin causes me to believe that I have been discriminated against as an unmarried woman. I can imagine no circumstance in which an unmarried man having a personal relationship with an unmarried woman would be questioned as I have been and denied licensing as I have been because of associations which were not of a notorious or unsavory nature.

Affidavit of Sydell R. Kraft, submitted in support of Opposition to Defendants' Motion for Summary Judgment, at ¶ 6. The transcripts of the GCB hearings indicate clearly that the GCB was preoccupied with Kraft's association with Howard Levin, not because she was a single woman, but because Howard Levin apparently communicated with a convicted felon, because business entities over which Levin exercised a great amount of control had apparently violated Nevada gaming rules, and because Levin apparently had large gambling debts which he may have employed a subterfuge to avoid. Exhibits A and G to Motion for Summary Judgment.

The plaintiffs have failed to allege a class-based animus underlying the conspiracy they describe. The defendants, moreover, have succeeded in showing that, without question, there was no class-based animus. On this basis, the defendants are entitled to summary judgment on the claims for relief asserted by plaintiffs un-der 42 U.S.C. § 1985. Further, because the plaintiffs' claim under § 1985 fails, so does their claim under 42 U.S.C. § 1986. *See Santistevan v. Loveridge,* 732 F.2d 116 (10th Cir.1984).

## INJUNCTIVE RELIEF

The plaintiffs' sixth claim is one seeking injunctive relief. Specifically, the plaintiffs seek "injunctive relief requiring that the letter dated March 7, 1986, be rescinded and requiring each defendant to refrain from interfering with plaintiffs' business activities in or outside the State of Nevada." Complaint at 22.

The March 22, 1986, letter was written by defendant Jacka to all Nevada gaming licensees and their affiliates. The letter notified them that Kraft and TAG–Nevada had been denied licenses, and notified them of Nevada law which limits licensees' dealings with those denied licenses.

As the GCB and the Gaming Commission retain extensive discretion to deny a license to conduct gaming business in Nevada, those entities retain discretion to oversee the business relationships of those licensed to conduct such business. *See State v. Glusman,* 98 Nev. 412, 651 P.2d 639 (1982) (Gaming statute providing that any person or entity that does business on premises occupied by specified, licensed gaming business may be required to apply for determination of suitability held constitutional.). The letter was within the discretion of the GCB and violated no rights of the plaintiffs.

There is no question of fact regarding the plaintiffs' sixth claim. The plaintiffs are not entitled to the injunctive relief they seek. Summary judgment must be granted in favor of defendants on this claim.

## THE FRAUD CLAIM

The only claim for relief not affected by the above analysis is the plaintiffs' third claim for relief, which is brought on a theory of common law fraud. That claim is grounded completely on state law. The Court has subject matter jurisdiction over that claim only under the doctrine of pendent jurisdiction. As discussed above, the defendants are entitled to summary judg-

ment or dismissal of all the plaintiffs' federal claims. Pendent jurisdiction over the state claims is therefore lost, and those claims must be dismissed. *See Litchfield v. Spielberg,* 736 F.2d 1352, 1358 (9th Cir. 1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985).

ORDERS

IT IS, THEREFORE, HEREBY ORDERED that the defendants' Motion for Summary Judgment (docket #13) is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' first and second claims for relief, which were withdrawn by plaintiffs, are DISMISSED.

IT IS FURTHER ORDERED that plaintiffs' third claim for relief is DISMISSED.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment in favor of defendants and against plaintiffs on all plaintiffs' claims for relief.