**James Auther HAMM, Plaintiff,**

v.

**Archer L. YEATTS, Jr., et al.,
Defendants.**

Civ. A. No. 78–0029–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Sept. 25, 1979.

Mary Lynn Tate, Yeary & Tate, Abingdon, Va., for plaintiff.

William P. Bagwell, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

### GLEN M. WILLIAMS, District Judge.

The plaintiff, James Auther Hamm, an unsuccessful applicant for an off-premises retail beer license, brings this action pursuant to Title 42 U.S.C. § 1983, seeking declaratory relief and damages, naming the members of the Alcoholic Beverage Control Commission and a Commission hearing officer as defendants. On June 20, 1977, plaintiff filed an application with the Alcoholic Beverage Control Commission for an off-premises beer license for the sale of beer at a store which he owns and operates in Washington County. On August 10, 1977, a hearing on plaintiff's application was held at Abingdon, Virginia, before the defendant hearing officer. Various residents of Washington County filed objections and produced evidence at the hearing. The plaintiff, represented by counsel, produced evidence in support of the application. In a decision which was entered on August 18, 1977, the hearing officer determined that plaintiff's license should be refused, because it was found that the location of the applicant's place of business is so situated that "violations of the ABC Act and laws of the Commonwealth relating to peace and good order would result from issuance of the license and operation thereon by the applicant, . . . [that it] is so situated with respect to two churches that the operation of such a place under the license would adversely affect or interfere with the normal, orderly conduct of the affairs of such institutions," that it is so situated with respect to a residence as to interfere with the use of that residence, and because plaintiff had been convicted of driving while intoxicated within five years of the date of his application, although this reason was found insufficient standing alone. Plaintiff then filed a timely notice of appeal to the Commission from the hearing officer's decision. A hearing was conducted on plaintiff's appeal on September 27, 1977, and by final decision and order dated September 28, 1977, plaintiff's application was denied for the reasons stated by the hearing officer.

Plaintiff contends that the Commission's action in denying him a license is constitutionally infirm for four reasons. First, plaintiff asserts that Va.Code Ann. § 4–31, which permits the Commission to deny a license in certain instances, is unconstitutional in that "it sets out standards which may be applied by the Commission in refusing a license but it does not mandate the application of any standard to the applicant," and, is, therefore, inherently arbitrary and, thereby, violative of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. Second, plaintiff maintains that certain provisions of Va. Code Ann. § 4–31, specifying when the Commission may refuse to grant a license because of the location of the proposed place of sale, are so vague as to violate plaintiff's right to due process of law under the Fourteenth Amendment. Third, plaintiff alleges that in contravention of equal protection and due process he was denied a license whereas other persons similarly situated have received licenses. Fourth, it is asserted that Va.Code Ann. § 4–31(a)(5)(f), which provided at the time plaintiff's application was denied that the Commission's action "in granting or in refusing to grant any license . . . shall not be subject to review by any court nor shall any mandamus or injunction lie in any such case," violated the First Amendment of the United States Constitution by denying plaintiff the right to petition the government for redress of grievances. Defendants have moved to dismiss maintaining that in denying plaintiff's license defendants were performing quasi-judicial functions and are, therefore, immune from an action for damages and that plaintiff has failed to state a claim upon which relief can be granted.

## DEFENDANTS' CLAIMS OF IMMUNITY

In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), a commodity futures commission merchant, Arthur N. Economou & Co., brought suit

against numerous Department of Agriculture officials, asserting common law torts as well as constitutional violations, following an unsuccessful administrative proceeding initiated by the Department of Agriculture to revoke or suspend the company's registration. Included among the named defendants were the Secretary and Assistant Secretary of Agriculture, the Chief Hearing Examiner, the Judicial Officer, the Department Attorney who had prosecuted the enforcement proceedings, and various officials of the Commodity Exchange Authority. The district court dismissed all claims against individual defendants finding them to be absolutely immune. The Second Circuit reversed holding that federal officials sued for constitutional violations are entitled only to a qualified immunity based on the good faith and reasonable grounds of their actions. On certiorari the Supreme Court affirmed the court of appeals as to its determination that federal executive officials generally are to be afforded qualified immunity but reversed its refusal to recognize an absolute immunity for those executive officials involved in the adjudicatory process. According to the court, "in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer* [*Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)] subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Id.* at 507, 98 S.Ct. at 2911.

In finding certain defendants involved in the adjudicatory process to be cloaked with absolute immunity the court stated that "[t]he cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location." Examining the role of the Federal Hearing Examiner the court found "that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512–13, 98

S.Ct. at 2913–2914. The court found the Federal Hearing Examiners' role to be "functionally comparable" to that of a judge, looking to such factors as his authority to "issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions." *Id.* at 513, 98 S.Ct. at 2914. But more importantly, the court reasoned, "the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Id.* at 513, 98 S.Ct. at 2914. As indices of the hearing examiners' independence, the court pointed to the statutory restrictions precluding them from performing duties inconsistent with their duties as hearing examiners, the fact that they are not responsible to or subject to the supervision or direction of employees or agents engaged in performance of investigative or prosecutorial functions for the agency, their duty not to consult any person or party, including other agency officials, concerning a fact at issue in the hearing, unless on notice and opportunity for all parties to participate, the fact that they are assigned cases in rotation, that they may be removed only for good cause established and determined by the Civil Service Commission after a hearing on the record, and the fact that their pay is controlled by the Civil Service Commission. Upon finding such officials to be cloaked with absolute immunity, the court also went on to hold "that an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* at 517, 98 S.Ct. at 2916.

 Scrutiny of the functions and duties of the Members of the Alcoholic Beverage Control Commission and those designated by the Commission to conduct hearings leads this court to the conclusion that the grant of absolute immunity, when they are performing in their adjudicatory capacities, is essential for the conduct of their affairs. In reaching that conclusion the court finds,

as the Supreme Court found in *Economou,* that the roles of those officials are functionally comparable to that of a judge.[1] They have the authority to issue subpoenas, to administer oaths, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions. Va.Code Ann. § 4–7(j) and 9–6.14:12; Rules of Practice of the Commission, as amended, Parts I and II. More importantly, however, the process of adjudication is structured to insure a decision on the merits free of extrinsic considerations. In accordance with the provisions of Va.Code Ann. § 4–31(b) an applicant for an alcoholic beverage license is entitled to a hearing in conjunction with his application. That right is given substance through the provisions of the Administrative Process Act, Va.Code Ann. § 9–6.-14:1 *et seq.,* which is made applicable by virtue of Va.Code Ann. § 9–6.14:12(A). The hearing is conducted in a fashion similar to a court trial with a record being made and a decision based "upon the evidence presented by the record . . ." being rendered. Va.Code Ann. § 9–6.14:12(E).[2] Consequently, the court finds the grant of absolute immunity to be in accord with the rationale of *Economou.*[3]

### PLAINTIFF'S DUE PROCESS AND EQUAL PROTECTION CHALLENGES TO § 4–31

Plaintiff was given four reasons for the denial of his application. Each reason given was derived from a separate provision of Va.Code Ann. § 4–31.[4] As the court finds one of those provisions sufficient to support the denial it would be inappropriate to determine the constitutionality of the others. *See generally, Rescue Army v. Municipal Court,* 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947).

■ According to Va.Code Ann. § 4–31(a)(2)(d) the Commission may refuse to grant a license if it has reasonable cause to believe that the place to be occupied by the applicant "[i]s so situated with respect to any residence or residential area that the operation of such place under such license will adversely affect real property values or substantially interfere with the usual quietude and tranquility of such residence or residential area." In the present case, in recommending that plaintiff's application be denied, the hearing officer found, in part, that "[o]ne nearby resident objector is presently being disturbed by the applicant's operation by unidentified persons parking on the premises during the evening operating hours and after the establishment closes . . . [and that] [w]ith the acquisition of an ABC license, this condition can reasonably be expected to increase." Based on that determination the Commission found there to be reasonable cause to believe that the grounds of refusal in Va.Code Ann.

1. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), makes clear that state and federal officials share the same immunity for constitutional torts. As stated by the Court, it is "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Id.* at 504, 98 S.Ct. at 2909.

2. The Administrative Process Act provides for court review unless it is otherwise expressly precluded. Va.Code Ann. § 9–6.14:15. At the time plaintiff's application was denied, court review was precluded by Va.Code Ann. § 4–31(a)(5)(f). That section was amended in 1978 and now provides for review upon petition filed within 30 days from the entry of an order of the Commission refusing to grant a license.

3. Under similar circumstances, the commissioners of the South Carolina Alcoholic Beverage Commission have been found to be absolutely immune under § 1983 for actions taken in their adjudicatory capacities. *Brown v. De-Bruhl,* 468 F.Supp. 513 (D.S.C.1979).

4. The provisions of Va.Code Ann. § 4–31, upon which the denial was grounded, were (a)(1)(c), (a)(2)(b), (a)(2)(c), and (a)(2)(d). In accordance with the first of these provisions, (a)(2)(c), a license may be denied to an applicant who has been convicted of an offense involving the use of alcoholic beverages within the past 5 years. Evidence established that the claimant had been convicted of driving while intoxicated within that period. The hearing officer made clear, however, that he considered this ground to be insufficient standing alone. His decision was adopted and incorporated by the Commission.

§ 4–31(a)(2)(d) "pertaining to interference with the usual quietude and tranquility" had been substantiated, and assigned it as one reason for denying plaintiff's application. Plaintiff maintains that § 4–31(a)(2)(d) is unconstitutional because it is vague and lacking in standards. The court finds to the contrary.

■■■ Although a statute violates due process if it is so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application, *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), when the court is concerned with neither the definition of a crime nor a First Amendment freedom, greater leeway is allowed, and the statute is to be construed in light of its purpose. *Brennan v. Occupational Safety & Health Review Commission,* 505 F.2d 869 (10th Cir. 1974). The purpose of the applicable portion of Va.Code Ann. § 4–31(a)(2)(d) is clear. It is to protect the quietude and tranquility of residences or residential areas, a purpose needing neither explanation nor justification. Furthermore, it is difficult to conceive of a formalized standard capable of achieving that purpose. While it has been suggested that a standard setting forth fixed distances would pass constitutional muster, the court finds no reason grounded in the constitution why the facts and circumstances approach of the statute fails. In fact, the application of a fixed distance standard may very well conflict with rational land use. More importantly, however, the statute was enacted by the legislature pursuant to its authority under the Twenty-First Amendment, the second section of which provides that: "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." As stated by the Supreme Court that section gives the states more authority over matters involving intoxicating liquors than they would have under their general police powers:

> While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-First Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals.

*California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972). While the broad sweep of the Twenty-First Amendment does not foreclose all Fourteenth Amendment considerations, *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Moose Lodge No. 107 v. Iris,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), it does alter traditional Fourteenth Amendment scrutiny. As stated by the Court of Appeals for the Fifth Circuit the amendment "is unique in the constitutional scheme in that it represents the only expressed grant of power to the states, thereby creating a fundamental restructuring of the constitutional scheme as it relates to one product—intoxicating liquors." *Castlewood International Corporation v. Simon,* 596 F.2d 638, 642 (5th Cir. 1979). Accordingly, any analysis of the validity of a state statute regulating liquor must proceed from a vantage point of presumed state power. *California v. LaRue, supra,* 409 U.S. at 118–19, 93 S.Ct. 390. Viewing Va.Code Ann. § 4–31(a)(2)(d) with these precepts in mind the court finds that provision to be a valid exercise of state discretion under the Twenty-First Amendment to say where alcoholic beverages may or may not be sold.[5]

## PLAINTIFF'S CLAIM OF DISCRIMINATORY AND ARBITRARY TREATMENT

Plaintiff maintains that his rights to due process and equal protection were violated

---

5. Plaintiff has cited *Hornsby v. Allen,* 326 F.2d 605 (5th Cir. 1964), for the proposition that the absence of standards for selecting from among qualified applicants is violative of due process. As the court has found, however, the statute in question is not lacking in standards. However, insofar as *Hornsby* may be said to preclude the exercise of discretion it is expressly rejected.

in that he was denied a license while other persons similarly situated received licenses. It is contended, for example, that the Commission has granted licenses to persons in closer proximity than plaintiff to residences or residential areas. It is also maintained that the Commission's action was not justified by the evidence. Defendants, on the other hand, maintain that plaintiff has no "property" or "liberty" interests protectable under the Fourteenth Amendment. The court finds, however, the determination of that question unnecessary to the resolution of the case because assuming the existence of a protected "liberty" or "property" interest the record of the administrative hearing shows that neither principles of equal protection nor due process were violated.

■ As previously stated the basis of plaintiff's equal protection argument is the claim that other persons who were granted licenses were in the same or closer proximity than plaintiff to residences or residential areas. The court finds that argument to be misdirected. Plaintiff was not denied a license because he was a specified distance from a residence. Rather, it was determined from all the facts that a licensed establishment at plaintiff's proposed location might lead to interference with the quiet enjoyment of that residence. Distance is but one factor of the many factors which are involved in such a determination. The nature and character of the neighborhood, the topography of the land, the position of the properties and structures in relation to each other, and the existence of natural or man-made barriers are all examples of circumstances which are equally as important as distances in determining whether the granting of an Alcoholic Beverage Control license may have an impact on the "usual quietude and tranquility" of a residence or residential area. Perhaps the

most important factor, however, is one which has not been mentioned—the will of the citizens and residents of the community. In the present case, it was their objections and opposition which led, in part, to the rejection of plaintiff's application. They simply did not want an additional establishment selling alcoholic beverages in the area. If the intent of the Twenty-First Amendment is to be effectuated then, the federal courts must honor the will of the citizens of the state as to where alcoholic beverages may be sold. Accordingly, plaintiff's equal protection challenge is rejected.[6]

■ Plaintiff also maintains that his rights to substantive due process were violated in that the Commission's "conclusions do not conform to and are contrary to the evidence adduced at the hearing." The court finds that argument to misapprehend the proper scope of federal court review. It would be improper for this court to determine either that the evidence relied upon by the Alcoholic Beverage Control Commission was incorrect or that conclusions reached were in error: rather, the question for this court is whether the denial rests upon substantial evidence. *See generally, Woods v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Blunt v. Marion County School Board,* 515 F.2d 951, 956 (5th Cir. 1955); *Gwathmey v. Atkinson,* 447 F.Supp. 1113 (E.D.Va.1976).[7] The court finds that the denial rests upon such evidence and accordingly rejects plaintiff's claim.

### PLAINTIFF'S FIRST AMENDMENT CLAIM

As previously stated, plaintiff maintains that Va.Code Ann. § 4–31(a)(5)(f), which provided at the time plaintiff's application was denied that the Commission's action "in

---

6. This case does not involve and the court does not determine the effect of the Twenty-First Amendment where class-based invidiously discriminatory *animus* is involved.

7. *But cf. Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), wherein the Supreme Court enunciated the "constitutional fact doctrine." According to that doctrine

"[w]hen a fact is the asserted constitutional basis for the exercise of the power in question, the court must itself make a finding of the fact and may in its discretion take evidence as to that fact." Jaffe, Judicial Review: Constitutional and Jurisdictional Fact, 70 Harv.L.Rev. 953 (1957).

granting or in refusing to grant any license . . . shall not be subject to review by any court nor shall any mandamus or injunction lie in any such case," violated the First Amendment of the United States Constitution by denying plaintiff the right to petition the government for redress of grievances. That section has been amended and now provides for circuit court review of the Commission's actions in denying applications for Alcoholic Beverage Control licenses.[8] Consequently, the question of the constitutionality of the statute is moot. *Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974).

For the above-stated reasons, judgment is entered for defendants.