COURT OF APPEALS OF VIRGINIA

Present:  Judges Bray, Annunziata and Overton

CAPITAL LAND, INC. T/A
 LONGHORN II SALOON & GRILLE

v.    Record No. 3042-96-2                    MEMORANDUM OPINION[*]
                                                 PER CURIAM
VIRGINIA ALCOHOLIC BEVERAGE CONTROL            JULY 15, 1997
 BOARD, ELLEN B. SLAYMAKER, KENNETH
 WILLIS, LLOYD JACKSON AND GARY FOX

                                       FROM THE CIRCUIT COURT OF
HENRICO COUNTY
                     L. A. Harris, Jr., Judge

          (Joseph W. Kaestner; Brian R. Pitney; Kaestner,
          Pitney & Jones, P.C., on brief), for appellant.

          (James S. Gilmore, III, Attorney General; Michael
          K. Jackson, Senior Assistant Attorney General;
          Louis E. Matthews, Jr., Assistant Attorney
          General, on brief),  for appellee Virginia
          Alcoholic Beverage Control Board.

          (Thomas A. Lisk; LeClair, Ryan, P.C., on
          brief), for appellees Ellen B. Slaymaker,
          Kenneth Willis, Lloyd Jackson and Gary Fox.


     The Virginia Alcoholic Beverage Control Board ("ABC Board")

denied a beer on-premises license to Capital Land, Inc., t/a

Longhorn II Saloon & Grille ("Capital Land").  Capital Land

appeals the decision of the circuit court affirming that ruling

and raises the following issues on appeal:  (1) whether the

circuit court erred in affirming the ABC Board's denial of

Capital Land's license when the ABC Board's findings of fact do

not support the conclusion that the place to be occupied will

─────────────────
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

substantially interfere with the usual quietude and tranquility of the residential area; and (2) whether the circuit court erred in affirming the ABC Board's decision when the ABC Board unlawfully exercised unauthorized administration and enforcement of zoning.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  Rule 5A:27.

FACTS

Capital Land submitted an application for a mixed beverage and wine and beer on-premises license with the ABC Board on December 15, 1995.  Capital Land later withdrew the application to sell mixed beverages and wine.

On February 23, 1996, a formal hearing concerning Capital Land's application for an on-premises beer license was held before an ABC Board hearing officer.  The hearing officer made findings of fact and granted the license.  Citizen-objectors appealed the hearing officer's decision to the ABC Board.  After reviewing the record and hearing arguments of counsel, the ABC Board concluded that

> the portion of the objection pertaining to
> substantially interfering with the usual
> quietude and tranquility of the surrounding
> residential area is substantiated by evidence
> which shows a likelihood that the operation
> of the applicant establishment under an on-
> premises A.B.C. license will substantially
> and adversely affect the peace and
> tranquility of the surrounding residential
> area.

The ABC Board then refused the application for a license.

## I. THE RECORD SUPPORTS THE ABC BOARD'S DECISION

Code § 4.1-222(A)(2)(d) grants the ABC Board discretion to refuse to issue an ABC license in instances where the place to be occupied by the applicant "[i]s so located with respect to any residence or residential area that the operation of such place under such license will . . . substantially interfere with the usual quietude and tranquility of such residence or residential area."

Although the hearing officer found that the citizen objections were not substantiated, the ABC Board acted within its discretionary authority when it refused to issue the license. Capital Land argues that the ABC Board's findings of fact do not support its decision. However, on appeal, "[t]he sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). Moreover, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Id. at 244, 369 S.E.2d at 8. "A court may not merely substitute its judgment for that of an administrative agency." Jackson v. W., 14 Va. App. 391, 400, 419 S.E.2d 385, 390 (1992). We find that the ABC Board's decision was based on substantial evidence.

3

## Capacity of the Facility and Parking

The facility is located on a two lane road on an area "dominated by residential property," although it is zoned B-3 which allows for commercial establishments. Barbara Graham, President of Capital Land, testified that she expected 400 patrons per night at the business, but that the certificate of occupancy allows 645 people in the building. Thus, the evidence that the building capacity is 645 persons and is located in a predominately residential neighborhood supports the ABC Board's reliance on the large capacity of the facility as a primary factor in its decision to refuse the on-premises ABC license.

Further, Graham stated that the parking lot had about 225 parking spaces and had only one ingress and egress outlet. One nearby resident testified that, in the past, patrons of the facility drove through the neighborhood searching for parking spaces when the parking lot was full. This evidence, combined with the building's capacity of 645 people and only 225 parking spaces, further supports the ABC Board's decision.

## Late Night Operation of the Applicant Business

The facility's anticipated hours of operation are from 7:30 p.m. until 2:00 a.m. on Thursday through Saturday nights. Ellen Slaymaker, who lives about seventy feet from the establishment, testified that when the facility was leased by another individual, she had called the police to the location at least eight times for drunk and disorderly conduct and a noisy party.

She stated that she and her husband have been awakened numerous times by the noise from the facility and that she has heard music from the building until 1:30 a.m. or 2:00 a.m.

Gary Fox, who lives three blocks from the location, expressed concern for noise and vibrations from music on the premises, especially late at night or in the early morning hours.

Graham testified that in 1987 she constructed a ten foot fence and planted trees behind the fence to help decrease the sound or noise emanating from the building. However, she also stated that several of the trees have died and the fence is in need of repair.

Therefore, evidence in the record supports the ABC Board's reliance on this factor in denying the issuance of the ABC license.

### Residential Character of the Neighborhood

Fox and two other nearby residents expressed concern for neighborhood children's safety while bicycling or walking along the road with the increased traffic associated with the business.

Kenneth Willis expressed similar concerns, especially considering that the parking lot has only one entrance and exit, and considering the fact that the patrons would likely have consumed alcohol prior to their departure from the facility. Willis also expressed concern for the safety of the neighborhood children who, in summertime evenings, walk to convenience stores located near the Capital Land property. Slaymaker complained

that patrons of the facility threw trash into her yard in the past.

Therefore, considering the testimony of the citizens and residents of the community, substantial evidence in the record supports the ABC Board's decision that there is a likelihood that "the operation of the applicant establishment under an on-premises ABC license will substantially and adversely affect the peace and tranquility of the surrounding residential area." See Hamm v. Yeatts, 479 F. Supp. 267, 273 (W.D. Va. 1979) (In determining whether an establishment may impact on the "'usual quietude and tranquility'" of a residential area, the most important factor may be "the will of the citizens and residents of the community.").

## II. ABC BOARD'S AUTHORITY

Appellant argues that because the facility is located in an area that is zoned for commercial development, the ABC Board exercised unauthorized zoning authority when it denied Capital Land's application for an on-premises ABC license. However, former Code § 4.1-103(13), recodified as Code § 4.1-103(14), empowered the ABC Board to grant licenses for the distribution and sale of alcoholic beverages. Code § 4.1-222 establishes conditions under which the ABC Board may refuse to grant licenses. The ABC Board based its decision on the finding that the evidence showed "a likelihood that the operation of the applicant establishment under an on-premises ABC license will

6

substantially and adversely affect the peace and tranquility of the surrounding residential area."  Code § 4.1-222(A)(2)(d) clearly empowers the ABC Board to refuse to grant an ABC license on this basis.  The fact that the building is located in an area zoned for commercial use does not automatically qualify the proposed business for an ABC license.  Therefore, Capital Land's zoning argument is without merit.

Accordingly, the decision of the circuit court is summarily affirmed.

<u>Affirmed</u>.

7